15331

PORTER v. MULLINS

(17 S. E. (2d), 684)

326

*Mr. Jesse W. Boyd,* of Spartanburg, for appellant,

*Mr. Samuel T. Lanham,* and *Mr. John C. Lanham,* both of Spartanburg, for respondent,

November 21, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE A. L. GASTON.

The plaintiff recovered a verdict herein for $136.85 actual damages, and for $300.00 punitive damages, before Judge Merchant and a jury on May 8, 1940. The County Court overruled defendant's demurrer to the complaint and motion to require the complaint to be made more definite and certain; also the motion for a directed verdict, and for a new trial. Judgment was duly entered accordingly. The appellant served sixteen exceptions, which are argued under seven propositions.

The pleadings and the testimony establish as facts that the plaintiff bid in at auction sale a certain unimproved lot of land, owned by R. A. Finley, who died after the trial of the case. A deed to the premises was executed and delivered pursuant to the auction sale. The auction sale was not entirely successful and was terminated before many lots were sold. R. A. Finley testified that he first acquired the property about 1918, upon which his residence is situated, facing Roebuck road, outside the city limits of Spartanburg, containing thirteen acres. He testified in regard to the venture, that he has owned it ever since, except for a lot or two on the Roebuck road and the one sold to Mr. Porter; that he sold one lot to Jones; that Porter bought his at auction sale, and Finch bought his after the sale.

At the auction sale a plat or blue print was exhibited showing Woodlawn Avenue on the plat. This proposed street was also staked off for the sale on the ground. A plat made in 1914, before Mr. Finley owned the property, duly recorded, of the property, then known as the Bomar property, shows a strip of fifty feet between two blocks, marked Woodlawn Avenue. The auctioneer, Mr. Dudley Gaffney, publicly referred to lot No. 1 as a corner lot, being located on the corner of South Avenue and Woodlawn Avenue, but failed to get a buyer for this desirably located corner lot. The deed to the lot conveyed to the plaintiff describes the bounds of the lot as "beginning at an iron pin on the edge

of South Avenue, 250 feet southeast from the corner of Woodlawn Avenue," etc.

There is considerable testimony and some controversy in regard to the next step in the chain of events which finally culminated in this lawsuit.

The plaintiff's explanation is that after he obtained his deed he "started making arrangements to get the water to run so I could start work on the house," to connect with the city line in order to supply water for houses of Finch and the plaintiff, located upon lots sold by the defendant. After consultation the defendant was not unwilling to take a third interest in the proposed water line, to be run through his field. In fact a written agreement was signed between the defendant and the three men who owned the lots to the effect that the defendant could tap the line. This trade fell through because Jones did not have the right-of-way to sell, but it belonged to Mr. Black.

The plaintiff testified as to the next step as follows:

"Q. When did the question of Woodlawn Avenue come up with Mr. Finley? A. I was measuring to see where I would have to run, and Mr. Finley came out and said, 'What are you doing?' and I said, 'If I can't tap on at the road we will come through in here,' and he said, 'I don't blame you, if you can get it cheaper.' Mr. Godfrey and Mr. Finch and Mr. Finley and his son was all there.

"Q. When was that? A. I couldn't say the day, but it was after we had seen about tapping on at Mr. Jones'.

"Q. How soon after that did you consider laying it along on Woodlawn Avenue? A. Three or four days.

"Q. What did you do? A. I made arrangements for the pipe to be brought out.

"Q. Did you buy the pipe? A. Yes, sir, and the city water works was digging the ditch and laying the pipe for me, and they dug and got 200 feet in the ground and was going to come out Woodlawn Avenue, and they notified me that Mr. Finley had served notice on them."

Matters were abruptly halted here. At this point in the failure of negotiations a letter was received by the City Water Works Superintendent from the defendant's attorney.

It will be seen that the complaint is for damages incident to the laying of this private pipe line for city water to the lot sold to plaintiff by defendant, and that the defendant in violation of his promise stopped the plaintiff, in a willful and malicious breach of defendant's said promise and also his representations as to Woodlawn Avenue, while the plaintiff was in process of laying his pipe line, pursuant to defendant's statement to plaintiff that he could lay for himself a water pipe line up Woodlawn Avenue to South Street and up South Street to his lot. The plaintiff claims that his rights were violated and he was compelled to put his pipe line at a more expensive route following the highway, to his injury and damage.

The answer admitted that the plaintiff had purchased a lot from the defendant, set up a general denial as to the other material allegations, contained explanatory allegations, and reserved the right to insist upon the demurrer and motion to strike.

The defendant's demurrer and motion to amend were heard by the County Judge during the term of Court in which the case was tried, and both were overruled by a minute order. However, in overruling the motion to amend the trial Judge held that as it stood the complaint contained appropriate allegations to an action in tort for damages for violation of a known right, and also appropriate allegations for damages for willful breach of contract, and that the plaintiff would be required to elect on which cause of action he would go to trial. Plaintiff under this ruling elected to go to trial on a cause of action for breach of contract accompanied by fraudulent act, and the Court ordered the case to trial.

The first question presented by the appeal is that the defendant was prejudiced by the refusal to sustain the demur-

rer and to require the complaint to be made more definite and certain. The grounds of the demurrer are that three causes of action are improperly united in the complaint, to wit: (1) An action on covenant, (2) an action on oral promise relating to interest in real estate, and (3) an action for violation of dedication of Woodlawn Avenue to the public. The motion to strike relates to defendant's effort to segregate plaintiff's supposed causes of action on covenant, on promise, and for violation of dedication.

Appellant's contention in the argument is the refusal of the trial Court to sustain the demurrer, and to require the complaint to be amended, carried into the trial of the case to the defendant's disadvantage matters relating to the defendant's deed to the plaintiff, and matters relating to a street dedication.

While the County Court Judge held in overruling the demurrer and motion that the plaintiff should elect on which cause of action he would go to trial, it clearly appears that the case was tried on only one cause of action, viz., for breach of contract accompanied by fraudulent act.

The County Court Judge also instructed the jury as follows: "This action is for a breach of contract subsequent to the making of the deed. All that evidence is for you to consider. It is for the contract to furnish a place for the water line. The Foreman of the Jury: 'Your Honor, I would like to be instructed as to whether or not Mr. Porter had any legal rights in Woodlawn Avenue.' The Court: 'I think I would be wading a little bit far afield if I attempted to go into that, because you gentlemen are concerned with the contract between the parties and the violation of the contract. The action is based upon the contract, and not upon the violations of known right, which would be an action in tort."

The case was tried in a very narrow compass. The only actual damages testified to were in regard to the water pipe line. As construed by the County Court

Judge and under plaintiff's election, it appears that the demurrer was properly overruled. Only one cause of action is stated in the complaint and it alone was submitted to the jury. The suit is based on a claim for damages for the alleged breach of a contract to allow the plaintiff to lay his pipe line to his lot for damages. The allegations of the complaint relate to evidentiary matters, which necessarily are pertinent to show the aggravation of the alleged breach, and the consequent damages, and also the evil intent accompanied by fraudulent acts in the breach. The plaintiff relied upon the defendant's inducements, representations and promises, to use the short line along the route of Woodlawn Avenue to lay the water pipe line. After the city had dug 200 feet the work was stopped. The plaintiff was compelled to buy pipe for a longer route around the road, about 500 feet more, at the rate of $15.74 per 100 feet; he also lost a week's time in the futile effort to comply with defendant's terms and agreement. It would seem that the plaintiff has suffered a wrong and is entitled to his remedy in Court. As this Court has expressed it, "the 'subject of the action' is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises." The cause of action is the legal wrong committed against the plaintiff by the defendant. *Knight v. Fidelity & Casualty Co.,* 184 S. C., 362, 192 S. E., 558, 562. The allegations of the complaint objected to are material to show fraud and deceit. The demurrer was properly overruled and the motion to amend the complaint was also properly refused.

The second ground of the exceptions raises the question was there factual testimony to sustain a recovery, requiring the case to be submitted to the jury on defendant's motion for a directed verdict on the whole case. The appellant's argument is predicated on the theory that the plaintiff on cross examination stated that he never did make any agreement with Mr. Finley about the pipe line. Even if the plaintiff contradicts himself this is not a suffici-

ent reason to hold that there was no testimony of an agreement to furnish a "locale" for a pipe line. All of the facts and circumstances were for the jury's consideration, and a reasonable inference to be drawn from the testimony is that the defendant sold the lot under express or implied representation as to Woodlawn Avenue, coupled with defendant's subsequent offer and agreement to allow plaintiff to use the short route via Woodlawn Avenue to lay a water pipe line to enable plaintiff to erect a dwelling house on the lot. Thereafter defendant repudiated the entire transaction and ordered the city to stay off his property.

The jury might well infer from the evidence that the conduct of the defendant was actuated by cajolery and self-interest in violation of his previous inducements and offers. The version by the plaintiff and his witnesses was somewhat corroborated by the defendant's witnesses, including that of his son, Paul Finley. The version given by the plaintiff and his witnesses is to the effect that there was a verbal agreement whereby the three men, Porter, Finch and Finley, were to bear equally the expense of piping the water to the property and that each, was to tap the line for his own benefit. The plaintiff contends that when Finley decided to withdraw from this agreement he then promised Porter and Finch that they might go ahead without him, and lay the pipe line down Woodlawn Avenue, thus releasing Finley and satisfying his grantees, which would enable Finley to market the rest of his suburban development.

The third issue on the appeal is that no punitive damages should be allowed. The jury might well infer from the evidence that the defendant acted in an underhanded manner, calculated and intended to deceive. Even if no easement existed over Woodlawn Avenue, yet the defendant made every use of this blandishment to induce the plaintiff to act until finally the defendant demanded that the work stop until satisfactory arrangements are made with him for an easement. He wanted to use the pipe line for

an unlimited number of taps, wanted interest on his outlay, then broke his promise and stopped the work until he could get pay for what he ostensibly had dedicated to the public.

The jury was warranted in finding that by acts and deeds he deceived the plaintiff into the belief that a public way existed, then when his evil purposes were no longer enhanced thereby, he stopped the work by means of a letter, and when confronted with his perfidy, he "just leaned back and laughed and said I have done stopped you." His acts beforehand in exhibiting a plat showing Woodlawn Avenue, in actually staking off the right-of-way on the ground, in executing a deed with false representations, in regard to the bounds, were also parts of a scheme, which culminated in the final fraudulent breach of his promises, or contract, and these fraudulent acts accompanied the breach as part of the entire fraud. At least this was an issue for the jury under the evidence.

Punitive damages are recoverable for the fraudulent breach of a contract accompanied by fraudulent acts in the making of the contract as well as in the breach thereof. *Bradley v. Washington Fidelity Nat. Insurance Co.,* 170 S. C., 509, 171 S. E., 243, and circuit order sustained in *Welch v. New York Life Insurance Co.,* 183 S. C., 9, 189 S. E., 809.

We think that the Court properly submitted to the jury the question of punitive damages. *Winthrop v. Allen,* 116 S. C., 388, 108 S. E., 153, and *Sullivan v. Calhoun,* 117 S. C., 137, 108 S. E., 189.

All of these cases are founded upon the earlier case of *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann. Cas., 407.

The case of *Winthrop v. Allen, supra,* points out the difference in the case at bar and the line of cases which follow the doctrine of *Givens v. North Augusta Electric, etc., Company,* 91 S. C., 417, 74 S. E., 1067, and other cases relied

upon by the appellant. This distinction has been consistently followed by this Court.

The next exception relates to the charge to the jury ■ in regard to punitive damages, to wit, "If you find * * * that there was a fraudulent breach of the contract by the defendant, you could go further and award punitive damages." By reference to the charge, it will be seen that in the next sentence the Judge told the jury that punitive damages are allowed to punish a wrongdoer or person guilty of fraud, if there was a fraudulent act; that the jury is to take into consideration, in arriving at punitive damages, the financial worth of the defendant or party committing the fraudulent act, and also the gravity of the act committed, on the part of the person committing such fraud. At least three times the Judge referred to the fraudulent act, which must accompany the fraudulent intention and fraudulent violation of the contract in order to entitle the plaintiff to recover punitive damages. This was a sufficient explanation of the law on this point and the defendant did not call the Judge's attention to any apparent omission when at the conclusion of the charge the Judge asked counsel if anything else was desired.

The fifth proposition charges error on the part of ■ the trial Court under exception number eleven in instructing the jury as follows: "I do not believe there is any new matter set up in it, but if there is any new matter in the answer, the defendant has to prove that by the greater weight of the evidence." The jury could hardly think that the burden of proof was cast upon the defendant by this language, which negatived the idea that the answer contained new matter as an affirmative defense. The appellant contends that this was prejudicial in view of the Court's refusal to sustain the demurrer, and in requiring the plaintiff to elect one cause of action on which to go to trial. However, there is no connection between the charge at the end of the case and the ruling of the Court at the start, in re-

spect to defendant's answer. The jury could not believe or infer that the answer contained new matter, but was told it did not do so.

The sixth question is, was it error to charge the jury and permit plaintiff's counsel to address the jury on matters relating to a deed for a lot and the grantor's warranty. Exception number twelve comes under this question or issue. The Court used the expression, "All that evidence is for you to consider," not in reference to the deed, but exactly to the contrary. It occurred after Mr. Boyd said to the Court, "The purchase of the property and the deed go out of the picture, and this is just for the water line only."

Whereupon the Court said to the jury that he had attempted to instruct them with reference to what constitutes a contract and could not comment on the facts, and then said, "his action is for a breach of contract subsequent to the making of the deed. All that is evidence for you to consider. It is for the contract to furnish a place for the water line." This charge negatived the claim of damages relating to a deed for a lot and the grantor's warranty. In the words of the request by defendant's attorney these went out of the picture. Counsel and the Court agreed then that "this is just for the water line only." It is for the contract to furnish a place for the water line."

Immediately thereafter when the foreman of the jury asked whether Porter had any legal rights in Woodlawn Avenue, the trial Judge again entirely eliminated any consideration of an action in tort in regard to this matter. No exception is taken to the last part of the charge in response to the question by the foreman, and it is manifest that the Court did all he could to keep out of the case any other demand, or consideration of any other matters. Nor do we think the question by the foreman shows that the jury disregarded the charge, nor based its verdict on use and occupancy of Woodlawn Avenue. The motion for a new trial was

properly refused. The exception in regard to argument of counsel for plaintiff is not based upon any record of what was said, nor of any objection at the time raised by defendant's attorney. The only record of any objectionable remarks appears rather vaguely in the grounds of the motion for a new trial and argumentatively in the exception; and the only ground of the exceptions is that the Court should have instructed the jury to disregard the argument of plaintiff's attorney relating to the deed and the property and the street, and should have required the plaintiff's attorneys to refrain from such argument. While the record fails to disclose the objection or the remarks of counsel, it certainly is evident and obvious that the Court did confine the case to a suit for damages for a fraudulent breach of contract, relating to the water pipe line, accompanied by fraudulent acts in the breach. The jury was so instructed. The record shows a colloquy between counsel at the end of the first argument for plaintiff and the Court promptly ruled that plaintiff is not asking judgment for breach of warranty, but a breach of contract. The last issue raised is that the Judge did not fully explain to the jury the elements essential to a contract. The Judge not only defined a contract, and the necessity for a consideration, but also charged the defendant's request on this very matter. At defendant's request the Court charged that plaintiff could not recover unless the jury found as a fact by the preponderance of the evidence, that the defendant made a contract based on a valuable consideration, and that the contract was partly performed to the advantage of the defendant. The exception raises the point that the charge was misleading since in the absence of a written contract it was necessary to show part performance by the defendant to make nonperformance by the defendant a fraud on the plaintiff, the alleged contract being for a conveyance of an interest in real estate. We do not see how the charge was misleading or prejudicial in the respects set forth. The plaintiff claimed damages because he was stopped in laying the pipe line, pursuant to defendant's agreement that he could

lay it. This was the only issue. The defendant not only held the plaintiff to the issue on trial, but even now holds the plaintiff to the same issue on appeal. The trial Judge confirmed the issue to this one matter. It is only by argument that the other matters are again brought into the case. It is apparently a repetition over and over of the very things which were eliminated on the trial, and so cannot form the basis for sustaining the exceptions now.

All of the exceptions have been carefully considered and passed upon. None can be sustained, but are all overruled. Judgment is sustained.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE, and STUKES, and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.