0569

Shirley FLOYD and Mae Floyd, Respondents, v. COUNTRY SQUIRE MOBILE HOMES, INC., Appellant.

(336 S. E. (2d) 502)

Court of Appeals

*John L. Weaver* of *Yarborough, Lewis, Weaver & Stewart,* Florence, *for appellant.*

*T. Kenneth Summerford,* Florence, *for respondents.*

Heard Sept. 23, 1985.

Decided Oct. 31, 1985.

BELL, Judge:

This is an action for breach of contract accompanied by a fraudulent act. Shirley and Mae Floyd, the plaintiffs, obtained a jury verdict for $2,998.63 actual damages and $10,000 punitive damages against the defendant, Country Squire Mobile Homes, Inc. Country Squire appeals from the denial of its motions for an involuntary nonsuit and a directed verdict. It also takes exception to the trial judge's refusal to give certain requested jury charges. We affirm.

Where appeal is taken from refusal to grant a nonsuit or a directed verdict, this Court must view the evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Kennedy v. Carter*, 249 S. C. 168, 153 S. E. (2d) 312 (1967). If the evidence, so considered, is susceptible of more than one reasonable inference, then the motions for nonsuit and directed verdict are properly denied. *Id.*

Viewed in the light most favorable to the Floyds, the evidence in this case tends to establish the following facts.

In early July 1981 Mae Floyd, her daughter Shirley Floyd, and her daughter-in-law Mary Louise Floyd went to Country Squire to shop for a mobile home. They dealt with a salesman named James Player. The Floyds told Player they wished to purchase a mobile home, but their credit was bad because Shirley's car had been repossessed for failure to make car payments. They also explained they could not afford to pay more than $175 a month for a mobile home. Player advised the Floyds that a Brigadier mobile home selling for $18,345 would meet their needs and stated that if they paid him a good faith binder of $100 he would undertake to arrange financing for $175 a month or less. If the financing were obtained, Country Squire would retain the $100; if it were not, the $100 would be refunded. The Floyds agreed. They signed a credit application and gave Player $100.

After contacting a number of finance companies, Player arranged financing with General Electric Credit Corporation at a monthly payment of $271.02. He telephoned the

Floyds, told them their credit had been approved, and asked them to bring him a down payment of $2,998.63.

The Floyds returned to Country Squire on July 21st. Player worked up the financing figures on a yellow sheet, indicating a monthly payment of $175. He then had the Floyds sign a written sales contract and the financing documents in blank, explaining that the figures on the yellow sheet would be transferred to the contract later. He returned the $100 binder and the Floyds gave him a check for the $2,998.63 down payment. Player agreed to hold the check until the mobile home had been delivered to the Floyds.

Player cashed the down payment check on July 23rd. On August 15th, the Floyds received copies of the closing documents in the mail. When they saw the monthly payments were $271.02, they returned to Country Squire and demanded their money back. They left with the understanding that Player would arrange to refund their down payment. The down payment was never returned and the mobile home was never delivered. Player left the employment of Country Squire thereafter.

I

Country Squire contends that, if it is liable to the Floyds at all, it is liable for a simple breach of contract, not breach of contract accompanied by a fraudulent act. Because there was insufficient evidence to establish a fraudulent act, Country Squire argues, the trial judge should have granted its motions for nonsuit and a directed verdict.

Our law has long recognized a plaintiff's right to recover punitive damages for breach of contract accompanied by a fraudulent act. *See Welborn v. Dixon,* 70 S. C. 108, 49 S. E. 232 (1904). However, mere breach of a contract, even if willful or with fraudulent purpose, is not sufficient to entitle a plaintiff to go to the jury on the issue of punitive damages. *Vann v. Nationwide Ins. Co.,* 257 S. C. 217, 185 S. E. (2d) 363 (1971); *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C. 454, 165 S. E. 203 (1932). To recover punitive damages for breach of contract accompanied by a fraudulent act, the plaintiff must prove three elements:

(1) *A breach of contract. Bailey v. North Carolina Mutual Life Ins. Co.,* 173 S. C. 131, 175 S. E. 73 (1934). In the

absence of a breach of contract, the plaintiff's proper cause of action will generally be for fraud in the inducement. *See Smyth v. Fleischmann,* 214 S. C. 263, 52 S. E. (2d) 199 (1949).

(2) *Fraudulent intent relating to the breaching of the contract and not merely to its making. Thompson v. Home Security Life Ins. Co.,* 271 S. C. 54, 244 S. E. (2d) 533 (1978); *Branham v. Wilson Motor Co.,* 188 S. C. 1, 198 S. E. 417 (1938). Fraudulent intent is normally proved by circumstances surrounding the breach. *See Sutton v. Continental Casualty Co.,* 168 S. C. 372, 167 S. E. 647 (1933).

(3) *A fraudulent act accompanying the breach. Vann v. Nationwide Ins. Co., supra; Hardee v. Penn Mutual Life Ins. Co.,* 215 S. C. 1, 53 S. E. (2d) 861 (1949). The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character. *See Smith v. Canal Ins. Co.,* 275 S. C. 256, 269 S. E. (2d) 348 (1980); *Wright v. Public Savings Life Ins. Co.,* 262 S. C. 285, 204 S. E. (2d) 57 (1974); *Davis v. Bankers Life & Casualty Co.,* 227 S. C. 587, 88 S. E. (2d) 658 (1955); *Porter v. Mullins,* 198 S. C. 325, 17 S. E. (2d) 684 (1941); *Bradley v. Metropolitan Life Ins. Co.,* 162 S. C. 303, 160 S. E. 721 (1931).

In this case, Country Squire concedes there was evidence from which the jury could find Player undertook to obtain $175 a month financing for the Floyds. Unquestionably, he breached this agreement by arranging payments of $271.02 a month. Thus, there was evidence to establish the first element of the cause of action, breach of contract.

The evidence was likewise sufficient to support jury findings on the second and third elements.

The jury could reasonably infer a fraudulent intent from several circumstances relating to the breach. Among other things, the jury could find that Player told the Floyds he had obtained the desired financing when he had not; that he worked up a set of false figures on the yellow sheet which he represented as the terms of the financing; that he procured their signatures on blank closing documents and then filled

in different terms from those discussed with the Floyds; and that he wrongfully appropriated their down payment of $2,998.63 knowing they would not be able to make the $271.02 payments on the contract. These facts all point to a dishonest design on Player's part sufficient to establish fraudulent intent.

There was also evidence of a fraudulent act connected with the breach. The jury could find that Player, knowing full well he had not obtained $175 a month financing from General Electric Credit Corporation, procured the Floyds' signatures on blank financing agreements, then filled in those documents with terms different from what he promised the Floyds. He also took a down payment knowing he had not obtained the agreed financing. These acts were separate and distinct from the act constituting the breach of contract, but they were closely connected with it. The jury could find they were done dishonestly and in furtherance of Player's wrongful design to lock the Floyds into the purchase of a mobile home by misrepresenting the terms of payment after he failed to obtain the financing promised.

We are aware Country Squire vigorously disputed many of these facts at trial. On motions for a nonsuit or a directed verdict, however, the issue is whether there is sufficient evidence to send the cause of action to the jury. We hold there was sufficient evidence of each element of the cause of action to preclude the granting of a nonsuit or a directed verdict for breach of contract accompanied by a fraudulent act.

## II

Country Squire also urges reversal because the trial judge refused to give certain supplemental jury charges.

## A

The judge refused a request to charge Section 36-2-718, Code of Laws of South Carolina, 1976, dealing with liquidation or limitation of damages. Section 36-2-718 is quite lengthy and contains many provisions that are inapplicable to any facts appearing in the record. The trial judge was entitled to consider the request to charge in its entirety; he had no duty to extract the inapplicable

portions of the statute and to charge the remainder. Where portions of the statute were not applicable to any issue made by the pleadings and proof, it was not error for the judge to refuse to charge the statute. *Edens v. Cole*, 261 S. C. 556, 201 S. E. (2d) 382 (1973).

## B

Country Squire also requested the judge to charge the jury "as to the assumption the law makes when a person signs a document they are expected to have read and understand [sic] the document they have signed." Where the charge, if given in the exact language of the request, would be incorrect, incomplete, ambiguous, misleading, or confusing, it is not error to refuse it. *See McMahan v. Walhalla Light & Power Co.*, 102 S. C. 57, 86 S. E. 194 (1915); *Bedenbaugh v. Southern Railway Co.*, 69 S. C. 1, 48 S. E. 53 (1904); *Knobelock v. Germania Savings Bank*, 50 S. C. 259, 27 S. E. 962 (1897). In the form requested, Country Squire's proposed charge was imprecise, incomplete, and ambiguous. The judge committed no error in refusing it.

## C

Finally, Country Squire excepts to the judge's failure to charge that prior oral agreements are merged into a subsequent written contract. Country Squire requested no such charge at trial. A party desiring a more detailed charge or further instructions on a point presented by the evidence must request the additional instruction. *Marthers v. Hurst*, 226 S. C. 621, 86 S. E. (2d) 581 (1955); *Williams v. Southeastern Life Ins. Co.*, 197 S. C. 171, 14 S. E. (2d) 895 (1941). In the absence of a request, it is presumed the general charge is adequate and the failure of the trial judge to give an additional instruction on a specific point is not error. *Williams v. Southeastern Life Ins. Co., supra.*

Affirmed.

SHAW and CURETON, JJ., concur.