780 S.E.2d 611

Timothy A. ZINN, Robert Adams, Laura Arrington, Stephen C. Black, Bradley Kirk Bray, Mark D'Amico, Thomas A. DeVitis, Rodney Eddie Haynes, Jimmy Kelly, Whitney Renee Knox, Lynn C. Lanpher, Holly Levasseur, John Martin Loughlin, Joe Maranville, Khalif Middleton, Chelcie Ozentine, Judith A. Parker, Matthew W. Reed, Cynthia G. Reilly, Gerald Ryba, Sherry Singleton, Steven G. Thoni, Stratton Vitikos, Michael H. Willis, Michael J. Zanardo, Respondents/Appellants,

v.

CFI SALES & MARKETING, LTD, d/b/a Westgate Resorts, Appellant/Respondent.

Appellate Case No. 2012–213193.
No. 5364.

Court of Appeals of South Carolina.

Heard March 17, 2015.
Decided Nov. 25, 2015.

R. Hawthorne Barrett, of Columbia, and John S. Wilkerson, of Charleston, both of Turner, Padget, Graham & Laney, P.A., for appellant/respondent.

David J. Canty, of Myrtle Beach, and Gene M. Connell, Jr., of Surfside Beach, both for respondent/appellant.

McDONALD, J.

In this wage dispute action, Appellant/Respondent CFI Sales & Marketing, Ltd., d/b/a Westgate Resorts (CFI), appeals the circuit court's post-trial ruling that the reserve and charge back components of CFI's employment contracts with Respondents/Appellants (the Zinn Plaintiffs)[1] violated the South Carolina Payment of Wages Act.[2] On cross-appeal, the Zinn Plaintiffs argue the circuit court erred in (1) directing a verdict against Lynn Lanpher, Khalif Middleton, Sherry Singleton, Steven Thoni, and Michael Wills; (2) allowing the jury to consider terms of the employment contract that the circuit court subsequently determined to be illicit; (3) directing a verdict on their causes of action for breach of contract accompanied by a fraudulent act; and (4) limiting the amount of

---

1. As there are thirteen individual Respondents/Appellants, we will name them individually only when necessary.

2. S.C.Code Ann. §§ 41–10–10 to –110 (Supp.2014).

attorney's fees awarded. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

CFI is a timeshare developer of several resorts, including the Westgate Myrtle Beach Oceanfront Resort. The Zinn Plaintiffs worked for CFI as sales representatives (Sales Representatives) in the early-to-mid 2000s. The Zinn Plaintiffs' employment contracts with CFI addressed, among other things, their compensation both during their employment and after their respective discharges from CFI. The present case (the Zinn action) is the second lawsuit involving several former Sales Representatives' allegations of unpaid wages against CFI. All plaintiffs in the Zinn action were also parties in the case of *Judith A. Parker, Caroline Jordan, Christopher J. DeCaro, and Charles S. Walker, Jr., individually and on behalf of others similarly situated v. CFI Sales & Marketing, Ltd. d/b/a Westgate Resorts*[3] (the Parker action).

### *The Parker Action*

On September 4, 2007, Judith A. Parker, Caroline Jordan, Christopher J. DeCaro, and Charles S. Walker, Jr. (the Parker Plaintiffs) filed a civil action against CFI, seeking class certification and setting forth causes of action for recovery of the following: (1) "wages, penalties, and attorney's fees," (2) breach of contract, and (3) breach of contract accompanied by a fraudulent act. The Parker Plaintiffs also sought an accounting and a declaratory judgment "finding CFI's practices regarding payment of wages to be in degradation of statutory laws." Among other allegations, the Parker Plaintiffs claimed that the reserve account and charge back provisions of the CFI employment contracts violated the South Carolina Payment of Wages Act (Wages Act) in several respects, including the timing for final payments made after a Sales Representative had been discharged from employment. *See* S.C.Code Ann. §§ 41–10–10 to –110 (Supp.2014). The Honorable J. Michael Baxley certified a class consisting of former CFI Sales Representatives who previously worked in Myrtle Beach and had reserve accounts during the relevant period established by the court.

---

3. Civil Action Number 2007–CP–26–5478.

CFI compensated its Sales Representatives on a commission basis for each sale of a timeshare interest. The commission due to each Sales Representative was paid within a prescribed period after each sale, less a contractually agreed upon percentage of such commission allocated to a "reserve account." Such commissions—less the amount allocated to the reserve account—were paid to the Sales Representatives shortly after the sale even though the timeshare purchaser paid only a small percentage of the total purchase price at closing, often financing as much as 95% of the purchase price through a note and mortgage (collectively, Note and Mortgage) held by the seller.

Each Sales Representative contractually agreed to fund the reserve account with 10% of the commissions earned. This was designed to provide a measure of protection to CFI against defaults by timeshare purchasers on the Notes and Mortgages. The Sales Representatives agreed that the reserve portion of his or her commissions would be retained in the reserve account until the timeshare purchaser made six timely, consecutive monthly payments on the Note and Mortgage. The maximum amount of the reserve under the employment contracts was $3,500. However, the maximum reserve amount was subsequently increased to $7,000. CFI was unable to confirm whether the Sales Representatives received advance written notice of this increase in the reserve limit.[4]

If and when a timeshare purchaser made six timely, consecutive monthly payments on the Note and Mortgage, the reserve was "released" as to that sale. However, if a timeshare purchaser upgraded or downgraded their timeshare before making six timely, consecutive monthly payments, the account would show that a final payment had not been made, and the Sales Representative would not receive a commission from that sale. CFI explained that should a timeshare purchaser default, the amount of the commission already paid to the Sales Representative was charged against the balance of the reserve, which is commonly referred to as a "charge back." Each such defaulted sale resulted in a charge back until the

---

4. Pursuant to Exhibit A of CFI's employment contract, "any changes, modifications or adjustments" to the terms of employment "shall be effective upon notice to [e]mployee without further modification to this [a]greement."

reserve balance was exhausted. This allowed CFI to recover a portion of the commissions paid to Sales Representatives for sales on which CFI did not receive payment of the purchase price. However, pursuant to Exhibit A of CFI's employment contract:

## VI. CHARGEBACK ON CANCELED DEALS

A. During the term that Employee is engaged by Employer, no sales originated by Employee for which Employee has been paid a commission will be subject to charge back except as otherwise set forth herein.

B. In the event Employee is no longer engaged by Employer ... Employee shall be charged back for all sales upon which commissions have been paid in the event the purchaser(s) has/have not made six (6) timely and consecutive monthly payments as well as the ten percent (10%) minimum down payment.

Timeshare sales were evaluated based on the timeliness and frequency of the payments on the Note and Mortgage, and the reserve account appropriately reconciled. CFI's commission supervisor, Connie Sharp, testified that when a Sales Representative separated from CFI, 100% of their commissions went to fund the reserve account and was not "released" without a written demand after termination of the employment.

Q: To your knowledge[,] have any of the Plaintiffs ever been given written notice that when they separate from the payroll 100 percent of their commissions would go into the reserve rather than the 10 percent that's set forth in the contract?

A: Not that I know of.

. . .

Q: And prior to that date, I believe it was in April of '09[,] if a salesman for any reason failed to make that demand then [CFI] kept his commissions; correct?

A: We—when they notified us[,] then we would do the research but if they didn't[,] then we would [not].

Q: So, if a salesman was fired one day in October and he was hit by a bus crossing the street as he left the resort[,] then no request would ever be made; correct?

A: Right.

This practice was not mentioned in the CFI employment contract. Conversely, the contract did provide that once an employee was no longer engaged by CFI, "the funds remaining in the reserve account will be reimbursed to the [e]mployee only after the [e]mployer has determined that six (6) consecutive and timely monthly payments have been made on each sale made by [e]mployee for which [e]mployee has been paid a commission."

Sharp further testified that Sales Representative positions are "seasonal," meaning that Sale Representatives are hired in the spring and laid off in the fall.

On January 11, 2010, the parties to the Parker action reached an agreement as set forth in a memorandum of understanding (the MOU). By order dated January 29, 2010, Judge Baxley approved the class settlement and incorporated the MOU into the final judgment (the Parker Order).[5] The MOU contained the following provisions:

> **2. Stipulated Judgment.** As payment for and satisfaction of all claims made or asserted by the Class Claimants or which could or should have been made or asserted by the Class Claimant[s] for any and all matters occurring or arising during the Class Period in connections [sic] with commission reserves alleged to be due to Class Claimants and owed by CFI, including all claims for enhanced (double or treble) or punitive damages and pre-judgment interest and all claims for future payments of commission reserves, and inclusive of attorneys' fees and recoverable litigation costs (for which there shall be no separate award or recovery), a stipulated judgment shall be entered, [on] behalf of all Class Claimants (other than those who have opted-out) and Class Counsel (to the extent of their entitlement to payment of attorneys' fees and reimbursement of litigation costs) and against CFI in the amount of **Six Hundred Fifty Thousand ($650,000) Dollars.**
>
> . . . .

---

5. The Parker Order incorporated the MOU by reference and included a copy of it as an exhibit.

There shall be no further reconciliation or payment of reserves following the entry of the Stipulated Judgment. This Settlement *shall not* dispose of the claims for unpaid wages (not commission reserves) set forth in the matter styled *Timothy Zinn et al. v. CFI Sales & Marketing, Ltd.*, Civil Action No. 2009–CP–26–0043 ..., which *shall continue* unaffected by the Settlement of the Civil Action.

(emphasis added).

### *The Zinn Action*

The Zinn Plaintiffs filed their summons and complaint on January 5, 2009, alleging they were entitled to unpaid wages far in excess of the amounts maintained in the reserve accounts maintained by CFI and previously claimed in the Parker action. The Zinn Plaintiffs sought damages for: (1) wages, penalties, and attorney's fees; (2) breach of contract; and (3) breach of contract accompanied by a fraudulent act. The Zinn Plaintiffs further requested an accounting and a declaratory judgment "finding [CFI's] practices regarding payment of wages to be in derogation of statutory law." Following an extended discovery period, CFI moved for summary judgment, arguing the final Parker Order barred substantially all of the identical claims asserted in the Zinn action under the doctrine of res judicata.

The Honorable Benjamin H. Culbertson called the Zinn action to trial on February 13, 2012. Before trial began, Judge Culbertson heard extensive arguments on CFI's summary judgment motion. Ultimately, the circuit court ruled that the doctrine of res judicata expressly barred the Zinn Plaintiffs from asserting any claims that they either raised or could have raised in the Parker action.[6] Such claims included, but were not limited to, the validity of the reserve and chargeback clauses under the Wages Act. *See* S.C.Code Ann. §§ 41–10–10 to –110 (Supp.2014).

At trial, the Zinn Plaintiffs testified CFI owed them hundreds of thousands of dollars in unpaid commissions. Specifically, the Zinn Plaintiffs alleged they made sales while employed by CFI for which they did not receive commissions due

---

6. The circuit court did not enter a written order granting CFI's motion for summary judgment.

and payable as defined by the employment contracts. CFI contested these allegations and presented testimony that sales commissions became due to Sales Representatives only after the occurrence of two conditions precedent: (1) the purchaser did not cancel the deal within the allotted rescission period of seven days; and (2) the purchaser made a full down payment, typically 10% of the purchase price. CFI admitted that if the final installment of the timeshare purchaser's down payment were moved to the end of the ten-year note, the Sales Representative would not receive the sales commission for ten years. CFI further admitted that the contract did not contain any notice of this fact. Moreover, CFI admitted as a result of a minor accounting oversight, Laura Arrington did not timely receive a commission totaling $2,769.

Although there were initially twenty-five plaintiffs in the Zinn action, the following seven plaintiffs failed to appear at trial, and the Zinn Plaintiffs consented to their dismissal with prejudice: Jimmy Kelly, Whitney Renee Knox, Joe Maranville, Matthew W. Reed, Gerald Ryba, Stratton Vitikos, and Michael J. Zanardo. Thereafter, CFI successfully moved for directed verdict as to the following five plaintiffs: Steven G. Thoni, Khalif Middleton, Lynn C. Lanpher, Michael H. Wills, and Sherry Singleton.

At the close of the evidence, the judge directed a verdict in favor of CFI as to all of the Zinn Plaintiffs' claims for breach of contract accompanied by a fraudulent act, and the Zinn Plaintiffs agreed to withdraw the request for an accounting. Judge Culbertson then concluded that the issue of whether CFI violated the Wages Act as a result of its alleged non-payment of commissions to the remaining Zinn Plaintiffs was a question of law for the court to determine at a later time. Consequently, the circuit court submitted to the jury only the breach of contract claims of the following thirteen plaintiffs: Robert Adams, Laura Arrington, Stephen C. Black, Bradley Kirk Bray, Mark D'Amico, Thomas DeVitis, Rodney Eddie Haynes, Holly Levasseur, John Martin Loughlin, Chelcie Ozentine, Judith A. Parker, Cynthia G. Reilly, and Thomas A. Zinn. Thereafter, the jury awarded Arrington the exact amount presented in CFI's closing argument. The jury returned defense verdicts on the remaining twelve plaintiffs' claims.

The Zinn Plaintiffs filed post-trial motions requesting a new trial for the twelve plaintiffs whose claims the jury rejected, a tripling of Arrington's damages pursuant to the Wages Act, and an award of attorney's fees for all plaintiffs regardless of whether they were prevailing parties. On June 5, 2012, Judge Culbertson sent a letter to the parties delineating his post-trial rulings on the pending motions and instructing the Zinn Plaintiffs to prepare a proposed order memorializing the instructions and findings reflected in his letter.

As to the Wages Act issue, Judge Culbertson specifically instructed plaintiffs' counsel to include the following finding: "The defendant violated the [Wages Act] by modifying the employment contract without written notice to the employees and by failing to pay [Arrington] her wages within the time specified by law." Thus, it appears that Judge Culbertson's ruling as to the Wages Act violation was limited to two issues, one of which applied only to the sole prevailing plaintiff, Arrington. Judge Culbertson had previously concluded on summary judgment (and at trial) that res judicata barred the court from considering or ruling upon the reserve or charge back components of the employment contracts.

Despite the circuit court's instructions, the proposed order (Zinn Order) contained the following proposed findings:

Here, the contact [sic] of Defendants violates all of the above code sections. First, Plaintiffs['] wages were reduced without notice. Second, wages were withheld after separation from the payroll. *Third, the chargeback scheme is unenforceable and is contrary to the South Carolina Payment of Wages Statute in that an employee could sell a timeshare product and actually not be paid for ten years after the sale . . . .*

*For the reasons set forth above, Defendant's employment contracts with Plaintiffs violates [sic] the Payment of Wages Act as a matter of law and this court so declares that the contract is void as against public policy.*

(emphasis added). Judge Culbertson signed the proposed order as presented on July 19, 2012, and it was filed on August 7, 2012.

CFI subsequently filed a timely Rule 59(e), SCRCP, motion, arguing that the Zinn Order (1) did not accurately reflect the

court's ruling concerning CFI's entitlement to summary judgment on claims involved in the Parker action, and (2) inserted objectionable language invalidating CFI's employment agreements based on CFI's reserve and charge back systems. CFI sought "the deletion of the objectionable and unfounded language voiding CFI's employment contracts, in particular the purported findings that reserve and charge back provision violated the [Wages] Act."

CFI argues "the belated, improper language unilaterally inserted by the plaintiffs' counsel not only contravened the trial judge's ruling, but was also intended to circumvent the doctrine of *res judicata* as a legal bar to any subsequent re-litigation of all claims that were the subject of the Parker judgment, including the validity of the reserve and charge back provisions under the [Wages] Act." CFI further asserted the circuit court could not have found such a wholesale violation of the Wages Act as to all of the Zinn Plaintiffs—for modifying the terms of the contracts without written notice—without contradicting the jury's defense verdicts as to all of the Zinn Plaintiffs with the exception of Arrington. By form order filed on September 27, 2012, the circuit court denied CFI's Rule 59(e), SCRCP, motion.

## ISSUES ON APPEAL

CFI raises one issue on appeal:

I. Did the circuit court err in finding that the reserve and charge back components of CFI's employment contracts with the Zinn Plaintiffs violated the South Carolina Payment of Wages Act?

The Zinn Plaintiffs raise four issues on cross-appeal:

I. Did the circuit court err in directing a verdict against Lanpher, Middleton, Singleton, Thoni, and Wills?

II. Did the circuit court err in directing a verdict against the Zinn Plaintiffs on their cause of action for breach of contract accompanied by a fraudulent act?

III. Did the circuit court err in allowing the jury to consider terms of the contract that the court subsequently determined to be illicit?

IV. Did the circuit court err in limiting the amount of attorney's fees awarded?

ANALYSIS OF CFI'S APPEAL

CFI asserts the circuit court erred in finding the reserve and charge back components of CFI's employment contracts with the Zinn Plaintiffs violated the Wages Act, arguing that: (1) the doctrine of res judicata barred the circuit court's posttrial review of the legality of CFI's reserve and charge back systems under the Wages Act; (2) the language in the Zinn Order contradicts its oral ruling at trial as well as the jury's verdicts against all plaintiffs except Arrington; (3) CFI's employment contracts do not violate the Wages Act; and (4) the circuit court should not have tripled Arrington's damages or awarded attorney's fees without specifically basing those remedies on the late payment to Arrington.

## I. Res Judicata

CFI argues that because identical parties previously litigated the legality of CFI's reserve and/or charge back systems under the Wages Act in the Parker action, the circuit court properly ruled the doctrine of res judicata precluded any subsequent re-litigation.

■ "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999). "Under the doctrine of res judicata, '[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit.'" *Id.* (quoting *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C.*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)). "[T]he fundamental purpose of res judicata . . . is to ensure that 'no one should be twice sued for the same cause of action.'" *Judy v. Judy*, 393 S.C. 160, 173, 712 S.E.2d 408, 414 (2011) (quoting *First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.*, 207 S.C. 15, 24, 35 S.E.2d 47, 56 (1945)). "Res judicata is shown if (1) the identities of the parties is the same as a prior litigation; (2) the subject matter is the same as in the prior litigation; and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Johnson v. Greenwood Mills, Inc.*, 317 S.C. 248, 250–51, 452 S.E.2d 832, 833 (1994). "Our courts,

however, have found that the doctrine of res judicata is not an 'ironclad bar' to a later lawsuit." *Judy*, 393 S.C. at 167, 712 S.E.2d at 412. "Although there is no dispute in our jurisprudence regarding the three elements of res judicata, our courts have utilized at least four tests in determining whether a claim should have been raised in a prior suit." [7] *Id.* at 171, 712 S.E.2d at 414 (citation omitted).

### A. Identity of Parties

Our review of the record reveals that all of the Zinn Plaintiffs were also plaintiffs in the Parker action, and CFI is the sole defendant in both cases. Respondents/Appellants do not contend that the parties are not identical.

### B. Subject Matter

CFI asserts the subject matter of the Parker action "is virtually indistinguishable from the Zinn action," as the Parker Plaintiffs and the Zinn Plaintiffs set forth the same causes of action and request the same relief in their complaints. Moreover, the Parker Plaintiffs and Zinn Plaintiffs sought an accounting as well as a declaratory judgment "finding [CFI's] practices regarding payment of wages to be in derogation of statutory law ..." The only noticeable difference in the two complaints is that the Parker Plaintiffs requested class certification while the Zinn Plaintiffs did not. Therefore, we find CFI has established the identical nature of the subject matter in the Parker action and the Zinn action.

### C. Adjudication of the Issue

 CFI argues res judicata bars not only claims actually decided in the Parker action, but those which could have been so decided. The Zinn Plaintiffs challenge the existence of this

---

7. *See* James F. Flanagan, *South Carolina Civil Procedure* 649–50 (2d ed. 1996) ("South Carolina courts have used at least four tests to determine when a claim should have been raised in the first suit: (1) when there is identity of the subject matter in both cases; (2) when the first and second cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) when there is the same evidence in both cases; and recently, (4) when the claims arise out of the same transaction or occurrence that is the subject of the prior action.").

third element of the res judicata doctrine, arguing the court in Parker did not specifically rule on whether CFI's contractually implemented reserve and/or charge back procedure violated the Wages Act. As Judge Baxley's order in the Parker action (the Parker Order) addressed with finality the validity of the reserve and charge back procedure under the Wages Act, we agree with CFI that this issue has been adjudicated for purposes of the Zinn action. "[R]es judicata[, which] is more commonly referred to simply as claim preclusion ... bars plaintiffs from pursuing a later suit where the claim (1) was litigated or (2) could have been litigated." *Catawba Indian Nation v. State*, 407 S.C. 526, 537, 756 S.E.2d 900, 906 (2014) (citations omitted). "Although *res judicata* normally applies to issues that were previously raised or that could have been raised in the prior action, declaratory judgments are distinguishable." *Id.* at 539, 756 S.E.2d at 908.

> As one legal treatise has observed, res judicata does apply to declaratory judgments, but only as to issues *actually decided* by the court:

> Suits for declaratory judgments do not fall within the rule that a former judgment is conclusive not only of all matters actually adjudicated thereby but, in addition, also of all matters which could have been presented for adjudication. *A declaratory judgment is not res judicata as to matters not at issue and not passed upon. Unlike other judgments, a declaratory judgment determines only what it actually decides and does not preclude, under res judicata principles, other claims that might have been advanced.*

*Id.* at 539–40, 756 S.E.2d at 908.

The Parker Order incorporates by reference "Exhibit A," which is the parties' January 11, 2010 MOU. The MOU provides, in pertinent part, as follows:

> **2. Stipulated Judgment.** As payment for and satisfaction of all claims made or asserted by the Class Claimants or which could or should have been made or asserted by the Class Claimant[s] for any and all matters occurring or arising during the Class Period in connections [sic] with commission reserves alleged to be due to Class Claimants and owed by CFI, including all claims for enhanced (double

or treble) or punitive damages and pre-judgment interest and all claims for future payments of commission reserves, and inclusive of attorneys' fees and recoverable litigation costs (for which there shall be no separate award or recovery), a stipulated judgment shall be entered. . . .

Consequently, we agree with CFI that res judicata barred Judge Culbertson's post-trial review of the legality of CFI's reserve and/or charge back systems under the Wages Act. Thus, we reverse the circuit court as to this issue and remand with instructions for the circuit court to issue an amended order deleting the unsupported findings.

## ANALYSIS OF THE ZINN PLAINTIFFS' CROSS–APPEAL

The Zinn Plaintiffs raise four issues on appeal, asserting the circuit court erred in: (1) directing a verdict against Lanpher, Middleton, Singleton, Thoni, and Wills; (2) directing a verdict against the remaining Zinn Plaintiffs on their causes of action for breach of contract accompanied by a fraudulent act; (3) allowing the jury to consider terms of the contract that the court subsequently determined to be illicit; and (4) limiting the amount of attorney's fees awarded.

### I. Directed Verdict

When reviewing the circuit court's ruling on a motion for a directed verdict, this court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). The circuit court must deny a motion for a directed verdict if the evidence yields more than one reasonable inference or its inference is in doubt. *Strange v. S.C. Dep't of Highways & Pub. Transp.,* 314 S.C. 427, 429, 445 S.E.2d 439, 440 (1994). In considering a motion for directed verdict, neither the circuit court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence. *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct.App.2000). "The appellate court will reverse the trial court's ruling on a [directed verdict] motion only when there is no evidence to support the ruling or where the ruling is controlled by an error of law."

*Law v. S.C. Dept. of Corrections,* 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006).

### A. Lanpher, Middleton, Singleton, Thoni, and Wills

The Zinn Plaintiffs argue the circuit court erred in directing a verdict against Lanpher, Middleton, Singleton, Thoni, and Wills. We disagree.

### 1. Preservation

■ Initially, we question whether the Zinn Plaintiffs have abandoned this issue on appeal as their argument is conclusory. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal). In their appellate brief, the Zinn Plaintiffs argue they "testified to facts sufficient to take their case to the jury" but fail to offer any facts to support their argument. In their reply brief, the Zinn Plaintiffs offer testimony from each of these plaintiffs, including when they were employed by CFI, how they were paid, whether they were paid all wages due within thirty days of separation from CFI, and the amount they believed they were owed by CFI. The circuit court granted CFI's motion to strike the testimony of Thoni and Middleton. As this was not appealed, the circuit court's ruling on the motion to strike stands. *See Shirley's Iron Works, Inc. v. City of Union,* 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) ("An unappealed ruling is the law of the case and requires affirmance."). Therefore, we find this argument is preserved for appellate review only as to Lanpher, Singleton, and Wills.

### 2. Merits

In *Huffines Co. v. Lockhart,* 365 S.C. 178, 190, 617 S.E.2d 125, 131 (Ct.App.2005), this court explained that "[a] real estate broker suing on a conditional sales contract has the burden of proving that all conditions precedent to his right to a commission have occurred." *See also Champion v. Whaley,* 280 S.C. 116, 120, 311 S.E.2d 404, 406 (Ct.App.1984).

> Thus, a broker who sues for his commission ordinarily has the burden of proving that any conditions precedent to the duty of the seller to pay have been fulfilled. But if

the seller prevents a condition from occurring, then the condition is excused and his obligation to pay becomes unconditional. This is simply an instance of the general rule that one who prevents a condition of a contract cannot rely on the other party's resulting nonperformance in an action on the contract.

*Champion,* 280 S.C. at 120, 311 S.E.2d at 406 (internal citations omitted).

■ CFI's commission supervisor, Connie Sharp, testified commissions became due to a Sales Representative only after the occurrence of two conditions precedent:[8] (1) the purchaser did not cancel the deal within the allotted rescission period of seven days; and (2) the purchaser made a ten percent down payment.

■ The record reveals the Zinn Plaintiffs whose claims survived directed verdict *were able* to provide the jury with details regarding sales for which they did not receive compensation, including the names of the timeshare purchasers and the corresponding account numbers. On the other hand, Lanpher, Singleton, and Willis—plaintiffs against whom the verdicts were directed—failed to provide such sales specifics. Thus, we agree with the circuit court's ruling that any judgments awarded to Lanpher, Singleton, and Willis would have been "based exclusively on speculation, conjecture or surmise." *See Parrish v. Allison,* 376 S.C. 308, 319–20, 656 S.E.2d 382, 388 (Ct.App.2007) (explaining that the trial court may not submit "speculative, theoretical, and hypothetical views to the jury"). Accordingly, we affirm the directed verdicts granted against Lanpher, Middleton, Singleton, Thoni, and Wills.

## B. Breach of Contract Accompanied by a Fraudulent Act

■ The Zinn Plaintiffs argue that the circuit court erred in directing a verdict in favor of CFI regarding their

---

8. "A condition precedent to a contract is 'any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises.'" *Brewer v. Stokes Kia, Isuzu, Subaru, Inc.,* 364 S.C. 444, 449, 613 S.E.2d 802, 805 (Ct.App.2005) (quoting *Worley v. Yarborough Ford, Inc.,* 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App.1994)).

claims for breach of contract accompanied by a fraudulent act. In order to maintain a claim for breach of contract accompanied by a fraudulent act, a plaintiff must prove three elements: (1) a breach of contract; (2) "[f]raudulent intent relating to the breaching of the contract and not merely to its making;" and (3) "[a] fraudulent act accompanying the breach." *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (Ct.App.1985) (citations omitted). "The fraudulent act is any act characterized by dishonesty in fact or unfair dealing." *Conner v. City of Forest Acres*, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002).

> "Fraud," in this sense, "assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence."

*Id.* (quoting *Sullivan v. Calhoun*, 117 S.C. 137, 139, 108 S.E. 189, 189 (1921)). "Breach of contract accompanied by a fraudulent act ... requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making. Such proof may or may not involve false representations." *Ball v. Canadian Am. Express Co.*, 314 S.C. 272, 276, 442 S.E.2d 620, 623 (Ct.App.1994) (citation omitted). "Fraudulent intent is normally proved by circumstances surrounding the breach." *Floyd*, 287 S.C. at 54, 336 S.E.2d at 503–04. "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." *Id.* at 54, 336 S.E.2d at 504.

▇▇ Although each Sales Representative contractually agreed to fund the reserve account with 10% of the commissions earned up to a maximum amount of $3,500, CFI withheld more than 10% of their commissions and increased the maximum reserve amount to $7,000 without notice. Despite attracting job applicants by advertising "no commission chargebacks," testimony established that should a timeshare purchaser default, the amount of the commission already paid to the Sales Representative was indeed charged against the balance of the reserve. Further, although such a provision is

not contained in the employment contract, Sharp testified that when a Sales Representative separated from CFI, 100% of their commissions went to fund the reserve account and were not "released" without a written demand six months after termination.

The circuit court allowed the jury to consider the remaining plaintiffs' breach of contract claims; however, only Arrington received an award. The jury returned defense verdicts on all other breach of contract claims. Thereafter, the Zinn Plaintiffs moved for a new trial and for JNOV on the claims for breach of contract accompanied by a fraudulent act. However, the Zinn Plaintiffs did not make any post-trial motions regarding their claims for breach of contract. Therefore, we find the Zinn Plaintiffs, with the exception of Arrington, failed to preserve or establish that CFI breached their employment contracts. Accordingly, we reverse the circuit court's directed verdict only as to Arrington's claim for breach of contract accompanied by a fraudulent act. We affirm the circuit court's ruling as to all other plaintiffs whose claims for breach of contract went to the jury and resulted in defense verdicts.[9]

## II. Terms of the Contract

As best as we can determine, the Zinn Plaintiffs next argue the circuit court erred in granting partial summary judgment and instructing the jury not to consider reserve funds prior to January 2010. The Zinn Plaintiffs further assert the circuit court erred in not permitting the jury to consider their claims under the Wages Act.

We question whether the Zinn Plaintiffs have abandoned this issue on appeal as they failed to cite any authority on this point in either their appellate brief or reply brief. *See Broom v. Jennifer J.*, 403 S.C. 96, 115, 742 S.E.2d 382, 391 (2013) (finding an issue abandoned where the party's brief cited only

---

9. "In an action at law, on appeal of a case tried by a jury, the jurisdiction of the appellate court extends merely to the correction of errors of law, and a factual finding by the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Erickson v. Jones Street Publishers, LLC*, 368 S.C. 444, 464, 629 S.E.2d 653, 663–64 (2006).

one family court rule and presented no argument as to how the family court's ruling was an abuse of discretion or constituted prejudice); *First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal); *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct.App.2011) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority.").

Additionally, the Zinn Plaintiffs appear to change their argument in reply to "the trial court erred in denying motions for a new trial and JNOV," but the basis for the argument is not reasonably clear. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); *but see Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) ("When an issue is not specifically set out in the statements of issues, the appellate court may nevertheless consider the issue if it is *reasonably clear* from an appellant's arguments."); *see also Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct.App.2001) ("[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief"). Therefore, we find unpreserved the Zinn Plaintiffs' remaining arguments challenging the granting of partial summary judgment and the denial of their motions for a new trial and JNOV.

## III. Attorney's Fees and Treble Damages

The Zinn Plaintiffs contend the circuit court erred in awarding only 1/25 of the attorney's fees requested in their post-trial motions.

 "[T]he specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *Layman v. State*, 376 S.C. 434, 444, 658 S.E.2d 320, 325 (2008).

Pursuant to South Carolina Code section 41–10–80(C), "[i]n case of any failure to pay wages due to an employee as required by [s]ection 41–10–40 or 41–10–50 the employee may

recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow." S.C.Code Ann. § 41–10–80(C) (Supp.2014). "The language of § 41–10–80(C) is discretionary and not mandatory." *Temple v. Tec–Fab, Inc.,* 381 S.C. 597, 600, 675 S.E.2d 414, 415 (2009). "In *Rice v. Multimedia, Inc.,* 318 S.C. 95, 98, 456 S.E.2d 381, 383 (1995), [our supreme court] held that the imposition of treble damages in those cases where there is a bona fide dispute would be unjust and harsh." *Id.* The Court explained:

> [T]here are some wage disputes when the issue may involve a valid close question of law or fact which should properly be decided by the courts. We do not believe the legislature intended to deter the litigation of reasonable good faith wage disputes; we do believe the legislature intended to punish the employer who forces the employee to resort to the court in an unreasonable or bad faith wage dispute.

*Id.* (quoting *Rice,* 318 S.C. at 99, 456 S.E.2d at 384).

 The Zinn Plaintiffs sought attorney's fees of $54,276. However, because only Arrington prevailed, the circuit court awarded a pro rata share of the requested attorney's fees in the total sum of $2,171.04 and trebled damages to Arrington. While we see no abuse of discretion here, we remand the award of attorney's fees and treble damages to Arrington so that the circuit court may articulate the bases for these awards.

## CONCLUSION

We hold the doctrine of res judicata barred the circuit court's post-trial review of the legality of CFI's reserve and charge back systems under the Wages Act. We also find the challenged language in the post-trial Zinn Order contradicts the circuit court's res judicata ruling and the jury's verdicts against all plaintiffs save Arrington. Thus, we reverse and remand with instructions for the circuit court to issue an amended order deleting the unsupported findings.

We affirm the circuit court's directed verdicts against Lanpher, Middleton, Singleton, Thoni, and Wills. As to all remaining Zinn Plaintiffs, other than Arrington, we affirm the

circuit court's directed verdicts on the claims for breach of contract accompanied by a fraudulent act. We reverse the circuit court's directed verdict only as to Arrington's claim for breach of contract accompanied by a fraudulent act. We hold unpreserved the Zinn Plaintiffs' remaining arguments challenging the circuit court's granting of partial summary judgment and denial of the motions for a new trial and JNOV. We remand the award of attorney's fees and treble damages to Arrington so the circuit court may articulate the bases for these treble damages and attorney's fee awards. Accordingly, the findings and decisions of the circuit court are

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT and LOCKEMY, JJ., concur.